John C. Heffernan v. Commissioner.
Heffernan v. Commissioner
Docket No. 60736.
United States Tax Court
T.C. Memo 1957-205; 1957 Tax Ct. Memo LEXIS 41; 16 T.C.M. (CCH) 932; T.C.M. (RIA) 57205; October 31, 1957
*41 Petitioner was a partner in a stock brokerage firm during 1951 and 1952. He was a cash basis taxpayer and, despite business difficulties, reported substantial net income during both years. The petitioner filed timely declarations of estimated taxes, but failed to make timely installment payments of the taxes. Held, petitioner did not show reasonable cause excusing his failure to make timely installment payments, and the respondent properly determined additions to tax as provided by section 294(d)(1)(B). Neilson Olcott, Esq., for the petitioner. Norman L. Rapkin, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: *42 This proceeding involves the following additions to tax Additions to Tax Year Sec. 294(d)(1)(B) 1951 $170.80
1952 152.88 The only issue is whether the petitioner showed reasonable cause for failure to make timely installment payments of his estimated taxes. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. John C. Heffernan, the petitioner, resided in Allenhurst, New Jersey, and maintained his business office at 115 Broadway, New York City, during the years in issue. Petitioner filed an individual Federal income tax return on a cash basis for the calendar year 1951 with the former collector of internal revenue for the second district of New York. Petitioner filed Federal income tax returns on a cash basis for the calendar year 1952 with the district director of internal revenue, Lower Manhattan, New York. The petitioner was a partner in the stock brokerage firm of Richards, Heffernan & Benedict. On January 1, 1949, Richards, the senior partner and the moneyed man of the firm, withdrew. During the years here in issue, Heffernan and Benedict were the sole partners. The firm was engaged *43 as specialists on the New York Stock Exchange in various stocks, the major stock being the North American Company. Tradings of North American Company stock resulted in 50 to 80 per cent of the partnership income. The withdrawal of capital by Richards, plus fluctuations in trading of North American Company stock, placed the partnership in a precarious financial position during 1951 and 1952. Despite business difficulties, petitioner had net income of $21,827.26 and $16,339.80 in 1951 and 1952, respectively, and resulting tax liabilities of $3,096.12 and $1,779.64 in 1951 and 1952, respectively. Petitioner was a member of the Deal Country Club and/or the Allenhurst Beach Club during 1951 and 1952, and was allowed entertainment expense deductions of $2,400 for each of the calendar years 1951 and 1952. Petitioner was allowed deductions for charitable contributions of $3,700 and $3,975 for the years 1951 and 1952, respectively. The petitioner paid property taxes in Allenhurst, New Jersey, in the amounts of $720.32 and $733.63 for 1951 and 1952, respectively. During these years he paid mortgage interest of $600 and $617.51. He also had a seat on the New York Stock Exchange, of *44 which the market value was at least $20,000 during the years in issue. Also, he held 500 shares of capital stock, a portion of which was held on margin, from which he received dividends of $2,000 in each of the years involved. The petitioner filed declarations of estimated tax for the calendar years 1951 and 1952 within the time prescribed by the statute, showing estimated tax in the amounts of $4,078.50 and $2,000, respectively. On March 13, 1951, petitioner paid an installment on his estimated tax for the calendar year 1951 in the amount of $1,000, which was added to a $78.50 credit for the calendar year 1950. Petitioner made no further timely payments on his estimated tax for the calendar year 1951, nor any timely payments on his estimated tax for 1952. He ultimately paid all installments due, plus interest. The respondent determined additions to the tax, for failure to pay such installments within the time prescribed by law, in the amounts of $170.80 and $152.88 for 1951 and 1952, respectively. There was no reasonable cause excusing the petitioner's failure to make timely payments on his estimated tax liabilities during 1951 and 1952. Opinion Section 59(a)(1) and (b) *45 [1] provides the dates by which installments on estimated tax shall be paid. Section 294(d)(1)(B) [2] provides that an addition to the tax shall be imposed for failure to make timely payments of installments, unless a reasonable cause and lack of willful neglect can be shown by the petitioner. The addition is based on the actual amount of tax due. *46 The petitioner argues that he failed to make timely payments of the installments because of a lack of funds due to business difficulties, and that such lack of funds constitutes "reasonable cause" within the meaning of the statute, and therefore excuses the imposition of the addition to the tax. The petitioner had the burden of proving his inability to make timely payments due to lack of funds, and he failed to establish this alleged condition. He did not testify personally; he did not present in evidence either the partnership records or the partnership returns; and he did not establish what drawing accounts or distributions from the firm were available to him. No convincing evidence was presented to prove that he had no funds readily available at the time the payments were due. No convincing evidence was presented to prove an inability to raise funds with which to make the payments. The petitioner was a cash basis taxpayer. He, in fact, received and reported substantial net incomes of $21,827.26 and $16,339.80 for the years in issue. He owned valuable property, as evidenced by payments of property tax of over $700 in each year in question. The payments of mortgage interest *47 claimed as deductions during 1951 and 1952 indicate that the property was not too highly encumbered. The petitioner owned a seat on the New York Stock Exchange, of which the market value was at least $20,000 during the years in issue. He also owned 500 shares of corporate stock, some portion of which was held on margin, from which he received dividends of $2,000 in each of the years involved. Even if we assume (which we do not) that the petitioner had no funds with which to make timely installment payments, the lack of funds was due to an improper allocation of income. During the course of the years in issue, the petitioner had sufficient funds out of which the installments might have been paid; yet, he chose to use these funds in otherways. The petitioner derived substantial net income in 1951 and 1952, as shown above. While some of this income may have been retained in the business to replace the capital of Richards, the petitioner did have sufficient funds to cover his apparently high standard of living and to maintain a prosperous appearance for business purposes. He maintained memberships in one or two country clubs during the years in question, and spent upwards of $2,400 each *48 year at these clubs entertaining for business purposes. He made charitable contributions of $3,700 and $3,975 in 1951 and 1952, respectively. The petitioner should have realized that tax obligations were accruing on his substantial amounts of income during the years in question, and so allocated his income as to provide sufficient funds to make timely payments on his estimated taxes. The petitioner's tardy payments were due to a mistaken belief that prompt payment of taxes was not as important as payment of his other obligations, the maintenance of his apparently high standard of living and the maintenance of a prosperous business appearance. In short, a taxpayer may not place taxes at the bottom of his list of obligations and make timely payments only if he happens to have funds available at the time the taxes become due. We therefore conclude that petitioner did not show a lack of funds with which to make timely installment payments, or show that a lack of funds, even if such were the case under the circumstances here, constituted "reasonable cause" within section 294 (d)(1)(B) of the 1939 Code. See ; . *49 See also . Decision will be entered for the respondent. Footnotes
1. SEC. 59. PAYMENT OF ESTIMATED TAX. (a) In General. - The estimated tax shall be paid as follows: (1) If the declaration is filed on or before March 15 of the taxable year, the estimated tax shall be paid in four equal installments. The first installment shall be paid at the time of the filing of the declaration, the second and third on June 15 and September 15, respectively, of the taxable year, and the fourth on January 15 of the succeeding taxable year. * * *
(b) Amendments of Declaration. - If any amendment of a declaration is filed, the remaining installments, if any, shall be ratably increased or decreased, as the case may be, to reflect the increase or decrease, as the case may be, in the estimated tax by reason of such amendment, and if any amendment is made after September 15 of the taxable year, any increase in the estimated tax by reason thereof shall be paid at the time of making such amendment. ↩
2. SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT. * * *
(d) Estimated Tax. - (1) Failure to file declaration or pay installment of estimated tax. - * * *
(B) Failure to Pay Installments of Estimated Tax Declared. - Where a declaration of estimated tax has been made and filed within the time prescribed, or where a declaration of estimated tax has been made and filed after the time prescribed and the Commissioner has found that failure to make and file such declaration within the time prescribed was due to reasonable cause and not to willful neglect, in the case of a failure to pay an installment of the estimated tax within the time prescribed, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not to willful neglect, there shall be added to the tax 5 per centum of the unpaid amount of such installment, and in addition 1 per centum of such unpaid amount for each month (except the first) or fraction thereof during which such amount remains unpaid. In no event shall the aggregate addition to the tax under this subparagraph with respect to any installment due but unpaid, exceed 10 per centum of the unpaid portion of such installment.↩